# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 00-1274

_____

United States of America,     *
                     *
        Appellee,        *
                     *      Appeal from the United States
    v.                   *      District Court for the Eastern
                     *      District of Missouri
Darryl Sadler,            *
                     *
        Appellant.       *

_____

Submitted: June 13, 2000

Filed: December 8, 2000

_____

Before WOLLMAN, Chief Judge, McMILLIAN, Circuit Judge, and PANNER,[1] District Judge.

_____

McMILLIAN, Circuit Judge.

_____

[1] The Honorable Owen M. Panner, United States District Judge for the District of Oregon, sitting by designation.

Darryl Sadler appeals from a final judgment entered in the United States District Court[2] for the Eastern District of Missouri upon a jury verdict finding him guilty of one count of armed bank robbery and one count of use of a firearm during that crime. See United States v. Sadler, No. 4:99CR00045CDP (E.D. Mo. Dec. 20, 1999). For reversal, Sadler argues that (1) the district court erred by denying his motion for judgment of acquittal based on insufficiency of the evidence; (2) the district court abused its discretion by refusing to admit hearsay testimony offered for its relevance to witness credibility under Fed. R. Evid. 401; and (3) the district court erred by reopening his sentence under Fed. R. Crim. P. 35(c). For the reasons discussed below, we affirm the judgment of the district court in part and reverse in part and remand the case to the district court for resentencing.

**Jurisdiction**

Jurisdiction in the district court was proper based upon 18 U.S.C. § 3231. Jurisdiction in this court is proper based upon 28 U.S.C. § 1291. The notice of appeal was timely filed pursuant to Fed. R. App. P. 4(b) .

**Background**

The evidence introduced at trial, viewed in the light most favorable to the verdict, indicated the following. On April 27, 1995, Darryl Sadler entered a Boatman's Bank location in St. Louis, Missouri, with another man. While the other individual asked for penny wrappers, Sadler pulled a handgun from inside his jacket, held it to the bank security guard's head, and instructed the guard and the bank tellers to lie on the floor. He leaned over and touched one teller lying on the ground, told her to be quiet, and removed a $20 bill from her hand. After receiving an emergency call, a police

---

[2] The Honorable Catherine D. Perry, United States District Judge for the Eastern District of Missouri.

officer entered the bank, pointed his gun in the robbers' direction, and ordered them to stop. Two shots were fired at the police officer, hitting him in the back. Sadler ran out of the bank, continuing gunfire. Police apprehended the other man, who was later convicted. The bulletproof vest the police officer was wearing curtailed the severity of his injuries.

In May 1995, Sadler was taken into custody on state charges stemming from the bank robbery, which were subsequently dismissed. As he was being transferred from a holding cell into a courtroom, Sadler told Deputy Williams, the sheriff's deputy, that he was "the guy that shot the cop on Florissant." Williams did not mention Sadler's statement to anyone until two years later when Sadler made a similar statement while in custody on an unrelated charge. In December 1997, Sadler told Deputy Mopkins, Williams' partner in the transportation unit, that he was being held on a bogus charge and that the real reason he was in custody was that he had shot a police officer in a prior bank robbery. Mopkins did not take the statement seriously, so Sadler called out to the other deputy, Williams, and repeated that he had shot a police officer during a bank robbery. As a result of these statements, an investigation commenced.

Sadler was indicted in federal court on February 4, 1999, on two counts. Count I charged him with armed bank robbery, in violation of 18 U.S.C. § 2113(a) and (d). Count II charged him with using or carrying a firearm during and in relation to a crime of violence, in violation of 18 U.S.C. § 924(c)(1) and (2).

Sadler was tried by a jury on September 28-29, 1999. At the two-day jury trial, the security guard, the bank teller Sadler spoke to during the robbery, and the wounded police officer each identified Sadler as one of the bank robbers. Sadler's former girlfriend testified that Sadler had left his residence early on the morning of the robbery and returned with his head shaved. When she asked him if he had cut his hair as a result of the bank robbery, he told her that he had been involved in the robbery, that he needed to change his look and hide from detectives driving around the neighborhood,

and that he had killed a security guard while escaping. Sadler's attorney attempted to offer testimony from the attorney who represented Sadler in state court on the original bank robbery charges. The proposed testimony concerned Sadler's alleged professions of innocence made immediately prior to his first confession in 1995. The district court sustained the government's objection to this testimony as hearsay and irrelevant to whether the statement to the deputy occurred.

The jury found Sadler guilty on both counts. Sadler moved for a judgment of acquittal and the district court denied the motion. Sadler was sentenced on December 20, 1999, to consecutive prison terms of 168 months on Count I and 60 months on Count II, five years of supervised release, and special assessments totaling $100.00. At the sentencing hearing, the district court refused to upwardly depart from the Sentencing Guidelines. On December 21, 1999, Sadler filed a notice of appeal, and the United States filed a motion to set aside the sentence, alleging error based on this court's interpretation in United States v. Triplett, 104 F.3d 1074 (8th Cir. 1997), of the commentary to U.S.S.G. § 2K2.4 (holding that the district court erred by failing to compare the results of two alternative sentence calculations prior to sentencing). Pursuant to Fed. R. Crim. P. 35(c), the district court granted the government's motion and vacated Sadler's original sentence. Sadler was resentenced at a hearing on December 30, 1999. Applying a different calculation method, the district court sentenced Sadler to 240 months on Count I and 60 months on Count II, resulting in an increase of 72 months of imprisonment compared with his original sentence. This appeal followed.

**Discussion**

Sufficiency of the Evidence

Sadler first argues that the district court erred in denying his motion for judgment of acquittal because the evidence was insufficient for a rational trier of fact to find him

guilty beyond a reasonable doubt. The standard of review is very narrow, and the evidence is viewed in the light most favorable to the verdict. See United States v. Smith, 104 F.3d 145, 147 (8th Cir.1997); United States v. Cunningham, 83 F.3d 218, 222 (8th Cir.1996); United States v. Johnson, 56 F.3d 947, 956 (8th Cir.1995). The government receives the benefit of all reasonable inferences that could logically be drawn from the evidence. See Cunningham, 83 F.3d at 222. As long as any interpretation of the evidence, regardless of countervailing evidence, would allow a reasonable-minded juror to find the defendant guilty beyond a reasonable doubt, the verdict will be upheld. See United States v. White, 81 F.3d 80, 82 (8th Cir.1996); United States v. Armstrong, 16 F.3d 289, 292 (8th Cir.1994). Furthermore, it is permissible for a verdict to rely either completely or partially on circumstantial evidence. See United States v. Alvarado-Sandoval, 997 F.2d 491, 493 (8th Cir.1993).

Sadler contends that the witness testimony presented against him was insufficient for any reasonable juror to conclude his guilt beyond a reasonable doubt. Yet the prosecution offered eyewitness identification from a bank teller and a security guard present during the robbery, as well as testimonial evidence from Sadler's ex-girlfriend and two deputy sheriffs linking Sadler to the crime through his incriminatory statements. Sadler had an opportunity to expose any deficiencies in this evidence through cross-examination. The jury had the responsibility to evaluate the facts and assess credibility. See United States v. Jackson, 204 F.3d 812, 814 (8th Cir. 2000). Viewed in the light most favorable to the verdict, the evidence presented and the inferences springing from it are sufficient to support a jury's finding of guilt beyond a reasonable doubt. As a result, we affirm the jury's verdict.

Exclusion of Witness Testimony

Sadler also contests the exclusion of defense witness testimony during his trial. Counsel attempted to introduce testimony from the attorney who represented Sadler in state court to show that Sadler protested his innocence moments before his alleged

confession to the sheriff's deputy in 1995. The district court's evidentiary rulings are reviewed for abuse of discretion. See United States v. Oseby, 148 F.3d 1016, 1025 (8th Cir. 1998). The statements in question constitute hearsay under Fed. R. Evid. 801(c), because they were "offered in evidence to prove the truth of the matter asserted," namely, that Sadler was in fact innocent. Sadler argues that the statements were offered not to prove the truth of their content, but to implicate the credibility of the deputy's testimony about Sadler's confession. As such, Sadler contends that the statements should have been admitted under Fed. R. Evid. 402 as relevant because they tend to make a fact of consequence to the determination, the alleged confession, less probable. See Fed. R. Evid. 401. However, the proffered testimony would only have its desired effect if in fact the statements were true. Consequently, there is no way to avoid the categorization of the statements as hearsay. The district court did not abuse its discretion by excluding the defense witness testimony.

Sadler does not argue any hearsay exception, but his arguments imply that the excluded testimony consists of exculpatory prior statements which are consistent with his not guilty plea, used to rebut the sheriff deputy's testimony, and therefore not considered hearsay under Fed. R. Evid. 801(d)(1)(B). However, Sadler may not rely on this definition because he did not testify at the trial and was not subject to cross-examination, as required by Fed. R. Evid. 801(d)(1). See also United States v. Greene, 995 F.2d 793, 798 (8th Cir. 1993) (refusing to extend the privilege against self-incrimination to allow a defendant's statements to be admitted without allowing the government to cross-examine the defendant). Consequently, the proffered testimony does not fall into the non-hearsay category created by Rule 801(d)(1) and the district court properly excluded such testimony. See id; see also United States v. Waters, 194 F.3d 926, 931 (8th Cir. 1999) (excluding from evidence defendant's prior statements consistent with a plea of not guilty), United States v. Chard, 115 F.3d 631, 635 (8th Cir. 1997) (excluding as hearsay defendant's out-of-court exculpatory statements).

Federal Rule of Criminal Procedure 35(c) Resentencing Authority

Sadler argues that the district court erred by reopening his sentence under Fed. R. Crim. P. 35(c) because there was no clear error in his original sentence. The government responds that the district court was required to exercise its authority under Rule 35(c) to correct its clear error in failing to follow the "mandate" of Triplett, 104 F.3d 1074.

Where a defendant has been convicted of both a violent offense and a violation of 18 U.S.C. § 924(c), the Sentencing Guidelines require a district court to perform two different calculations: (1) the sentence possible for the violent crime *and* the § 924(c) violation, and (2) the alternative sentence resulting from the violent crime by itself with an enhancement for using a firearm. See U.S.S.G. § 2K2.4, cmt. n.2 (1997);[3] Triplett, 104 F.3d 1074. The district court must utilize its discretion in formulating the sentence only after these alternate calculations are evaluated. See id. In this case, however, the question is whether the district court, after initially failing to perform the necessary calculations, possessed the authority under Fed. R. Crim. P. 35(c) to *reopen* the original sentence in order to perform an alternate calculation.

---

[3] The commentary states that:

Where a sentence under this section is imposed in conjunction with a sentence for an underlying offense, any specific offense characteristic for the possession, use, or discharge of an explosive or firearm . . . is not to be applied in respect to the guideline for the underlying offense.

In a few cases, the offense level for the underlying offense determined under the preceding paragraph may result in a guideline range that, when combined with the mandatory consecutive sentence under [18 U.S.C. § 924(c)], produces a total maximum penalty that is less than the maximum of the guideline range that would have resulted had there not been a count of conviction under [18 U.S.C. § 924(c)] . . . . In such a case, an upward departure may be warranted so that the conviction under [18 U.S.C. § 924(c)] does not result in a decrease in the total punishment.

We apply a *de novo* standard of review for Rule 35(c) issues.  See United States v. Garcia, 112 F.3d 395, 397 (9th Cir. 1997) (stating that "issues of law presented in a Rule 35(c) motion are reviewed de novo."); accord United States v. Abreu-Cabrera, 64 F.3d 67, 71-73 (2d Cir. 1995) (applying a *de novo* standard of review without explicitly declaring it); United States v. Fahm, 13 F.3d 447, 452-54 (1st Cir. 1994) (same).  To the extent that the district court's decision was based on a question of law, dealing with the legal interpretation and construction of the sentencing guidelines, our review is *de novo*.  See United States v. Ramirez, 181 F.3d 955, 956 (8th Cir. 1999).

Rule 35(c) permits a district court to "correct a sentence that was imposed as a result of arithmetical, technical, or other clear error."  Fed. R. Crim. P. 35(c).  However, the scope of Rule 35(c) authority "is intended to be very narrow and to extend only to those cases in which an obvious error or mistake has occurred in the sentence."  Fed. R. Crim. P. 35 advisory committee's note; see also United States v. Barragan-Mendoza, 174 F.3d 1024, 1029 (9th Cir. 1999) (interpreting the history of Rule 35(c) as severely limiting the district court's authority to modify sentences); Abreu-Cabrera, 64 F.3d 67 at 71-73 (chronicling the history of Rule 35 and the limits placed on the scope of its authority).  Such errors are the type which would almost certainly be remanded to the district court for further action.  See Fed. R. Crim. P. 35 advisory committee's note; see also Ward, 171 F.3d at 191, Abreu-Cabrera, 64 F.3d at 72.

The Advisory Committee explicitly states that Rule 35(c) "is not intended to afford the court the opportunity to reconsider the application or interpretation of the sentencing guidelines or for the court simply to change its mind about the appropriateness of the sentence."  Fed. R. Crim. P. 35 advisory committee's note.  The Second Circuit emphasizes that, as long as the original sentence is legal and valid under the Sentencing Guidelines, Rule 35(c) is inapplicable.  See Abreu-Cabrera, 64 F.3d at 72 (holding that defendant's original sentence did not fall within the scope of Rule 35(c)

because it was not illegal nor the result of an incorrect or unreasonable application of the guidelines).[4]  In this case, the original sentence was not incorrect or unreasonable; it was merely one of two sentencing options the district court possessed the discretion to impose.

It is important to clarify the difference between this case and the requirements laid out in Triplett, 104 F.3d 1074.  In Triplett, the district court's improper calculation of a sentence resulted in double-counting, a type of error which would unquestionably be reversed on appeal.  See Triplett, 104 F.3d at 1082 (concluding that the district court may choose either sentencing alternative, but not both).  In this case, the district court imposed one of two acceptable sentences within its discretion, neither of which would be reversed on appeal.  Under these circumstances, the district court's attempt to resentence Sadler under Rule 35(c) illustrates an impermissible "change of heart as to the appropriateness of the sentence," Abreu-Cabrera, 64 F.3d at 72,  rather than a correction in the application of the guidelines.  As such, it does not constitute the type of "clear error" which permits a district court to reopen sentencing under Rule 35(c).  We vacate Sadler's sentence and remand  for resentencing consistent with this opinion.

---

[4]The holding in this case is distinguishable from other circuits where the error consisted of incorrectly applying the sentencing guidelines, United States v. Waters, 84 F.3d 86, 89 (2d Cir. 1996); using the wrong guideline to calculate the sentence, United States v. Yost, 185 F.3d 1178 (11th Cir. 1999); and misunderstanding the governing law, United States v. Ward, 171 F.3d 188, 191 (4th Cir. 1999).

**Conclusion**

For the reasons we have stated, the judgment of the district court is affirmed in part and reversed in part, and the case is remanded to the district court for resentencing consistent with this opinion.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.

-10-