# United States Court of Appeals
## For the Eighth Circuit

_____

No. 11-3850

_____

United States of America

*Plaintiff - Appellee*

v.

Jesus Lara

*Defendant - Appellant*

_____

Appeal from United States District Court
for the Western District of Arkansas

_____

Submitted: June 11, 2012
Filed: August 31, 2012

_____

Before LOKEN, GRUENDER, and BENTON, Circuit Judges.

_____

BENTON, Circuit Judge.

Jesus Lara pled guilty to distribution of a mixture or substance containing methamphetamine, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(B)(viii). The district court sentenced him to 130 months' imprisonment. Lara appeals his sentence, arguing that the government breached his plea agreement at the sentencing hearing. Having jurisdiction under 28 U.S.C. § 1291, this court vacates and remands for resentencing.

Lara entered into a plea agreement with the government that contained a stipulation on the drug quantity:

> 10.  The United States and the defendant agree that the most readily provable amount of drugs for which the defendant should be held accountable is at least 20 grams of methamphetamine, but less than 35 grams of methamphetamine. Pursuant to U.S.S.G. § 2D1.1, this quantity of drugs equates to a gross base offense level of 28 on guidelines.

The presentence report (PSR) stated that Lara's total amount to be considered for guideline purposes was 322.30 grams of meth. At sentencing, the government presented witnesses and introduced evidence of other, uncharged criminal conduct in the case, including Lara's involvement in several controlled buys of meth. The district court found Lara responsible for the PSR's quantity, resulting in an increased offense level and sentencing range.

On appeal, Lara argues that the government breached paragraph 10 when at sentencing, it introduced evidence of specific amounts and specific transactions supporting the PSR's quantity. To preserve this claim, Lara must have objected at sentencing to the drug quantity evidence as breaching the agreement. *United States v. Smith*, 590 F.3d 570, 576-77 (8th Cir. 2009), *citing* *Puckett v. United States*, 556 U.S. 129, 134-36 (2009). Although he generally objected to the evidence of the PSR's meth amount, he did not assert that the government violated the plea agreement. Because his claim was not properly preserved for appeal, it is reviewed for plain error. *See* *id.*

Under plain-error review, this court can correct an error not raised at trial if there is (1) error, (2) that is plain, and (3) that affects substantial rights. *United States v. Lovelace*, 565 F.3d 1080, 1087 (8th Cir. 2009), *quoting* *United States v. Keller*, 413 F.3d 706, 710 (8th Cir. 2005). If all three conditions are met, this court may

remedy the error only if it "seriously affects the fairness, integrity, or public reputation of judicial proceedings." *Id.*

Interpretation and enforcement of plea agreements is reviewed de novo. ***United States v. Stobaugh***, 420 F.3d 796, 800 (8th Cir. 2005). Plea agreements are essentially contracts between the government and the defendant. ***United States v. DeWitt***, 366 F.3d 667, 669 (8th Cir. 2004). "[W]here a plea agreement is ambiguous, the ambiguities are construed against the government." ***Stobaugh***, 420 F.3d at 800, *quoting* ***United States v. Andis***, 333 F.3d 886, 890 (8th Cir. 2003) (en banc) (alteration in original).

This court must first determine whether there was an error – here, whether the district court should have allowed the government to present evidence of the PSR's quantity. The government argues that it did not breach the plea agreement, because the stipulation to drug quantity and offense level in paragraph 10 was only an estimate, citing the *Stobaugh* case. The *Stobaugh* court found no breach where the parties agreed that the guidelines calculations were only estimates, and a separate paragraph of the plea agreement stated the government would provide "the entirety of the defendant's criminal activities" to the district court. *Id.*; *see also* ***United States v. Peck***, 496 F.3d 885, 890 (8th Cir. 2007) (no breach when the plea agreement did not address the guidelines calculations). Here, paragraph 10 stipulated a specific offense level and a specific range of meth – not estimates. Unlike the agreement in *Stobaugh*, paragraph 10 prevented the government from advocating an amount or offense level higher than that in paragraph 10.

The government invokes other provisions in the plea agreement addressing what the government can do at sentencing. Because the parties agree that this case is controlled by *DeWitt* and *Stobaugh*, we analyze the plea agreement here by comparing it to the agreements in those cases. The government first points to

paragraph 15, which states that (1) the agreement does not promise a specific sentence, (2) any discussion of a possible guideline range does not bind the court, and (3) his actual range may be greater than contemplated by the parties. The plea agreement in *DeWitt* contained such a general provision, but it did not override the specific stipulation to drug quantity and base offense level. ***DeWitt***, 366 F.3d at 668-70.

The government also relies on paragraph 16:

RELEVANT CONDUCT CONSIDERED

At the sentencing hearing, the government will be permitted to bring to the Court's attention, and the Court will be permitted to consider, all relevant information with respect to the defendant's background, character and conduct, including the conduct that is the subject of this investigation for which he has not been charged up to the date of this Agreement, and/or which is the basis for any of the counts which will be dismissed pursuant to this agreement, as provided by § 1B1.3 of the Sentencing Guidelines.

The government contends, "Because Lara's plea agreement contains no specific provision that conflicts with this general provision concerning the presentation of evidence relating to his relevant conduct, Lara's challenge cannot be successful." This court in *DeWitt* specifically rejected this argument – an agreement's general provision for consideration of "all relevant conduct" does not trump a specific stipulation to drug quantity and base offense level.

It is true that paragraph 3 of the plea agreement says that "uncharged related criminal activity may be considered as 'relevant conduct' pursuant to USSG § 1B1.3(a)(2) in calculating the offense level for the charge to which defendant will plead guilty." We do not agree, however, that this general provision permits the government to advocate a drug quantity higher than the total quantity to which it had specifically agreed in another section of the plea agreement. Under ordinary rules of contract interpretation, we give effect to the specific drug quantity

-4-

and base offense level stipulations of paragraph 11 over the plea agreement's more general provisions relating to "relevant conduct."

*Id.* at 670.

Finally, in paragraph 20, the government reserved the right to: (1) "make all facts known" to the court (subparagraph a); and (2) "call witnesses and introduce evidence in support of the Presentence Report" (subparagraph b). These general "introduce evidence" provisions are inconsistent with the specific stipulation to a quantity and offense level, which prevails. *See **DeWitt***, 366 F.3d at 670, *quoting **United States v. Rivera***, 357 F.3d 290, 295 (3d Cir. 2004) ("If the apparent inconsistency is between a clause that is general and broadly inclusive in nature and one that is more limited and specific in its coverage, the more specific term should . . . be held to prevail over the more general term") (internal quotations omitted). Moreover, the plea agreement's stipulation in paragraph 10, read with paragraph 20's right to introduce evidence, makes ambiguous the government's right to introduce evidence. "[W]here a plea agreement is ambiguous, the ambiguities are construed against the government." ***Stobaugh***, 420 F.3d at 800.

"Where the government stipulates to a drug quantity and a base offense level, it may not then initiate an effort at the sentencing hearing to obtain a greater sentence. . ." ***DeWitt***, 366 F.3d at 671. The government protests that it did not initiate the introduction of evidence in this case. When Lara objected to the PSR's amount, the court asked the government for a response. The government requested to present an agent's testimony to "allow the Court to have all of the information to make the decision whether or not to affirm or deny the objection with regard to that." The court's sole statement was, "You may proceed." The district court did not direct the government to present the evidence. *Cf. **id.*** at 671 ("there would have been no breach of the plea agreement if the district court had *directed* the government to present evidence that contradicted the stipulation.") (emphasis in original).

-5-

The government's presentation of evidence supporting the PSR's quantity breached the plea agreement. The district court plainly erred in allowing the government to introduce evidence of the PSR's quantity. Lara's substantial rights were affected because his top/bottom guidelines range was increased by 30/37 months, his 130-month sentence is not within the plea agreement's guidelines range, and he likely received a longer prison sentence. *See **United States v. Granados***, 168 F.3d 343, 346 (8th Cir. 1999) (holding that a defendant's substantial rights are affected when the government breaches a plea agreement, causing his prison sentence to be longer than it should have been under the plea agreement). As this error seriously affects the fairness, integrity, or public reputation of judicial proceedings, this court vacates and remands.

\* \* \* \* \* \* \*

Because the government breached the plea agreement, the judgment must be vacated, and the case remanded to the district court for resentencing before a different judge. ***DeWitt***, 366 F.3d at 672, *citing **Brunelle v. United States**,* 864 F.2d 64, 65 (8th Cir. 1988) (per curiam); *and **United States v. McCray**,* 849 F.2d 304, 306 (8th Cir.1988) (per curiam). The reassignment "is in no sense to question the fairness of the sentencing judge." ***Id.**, quoting **Santobello v. New York**,* 404 U.S. 257, 263 (1971).

———————————————